IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Richard D. Ridley, | C/A No.: 1:21-997-MBS-SVH |
| Plaintiff, | |
| vs. | |
| Errin Gaffney, Facility Administrator; Dr. Michele Dube, Clinical Director; and Nurse C. Nickles, Medical Director, | ORDER |
| Defendants. | |

Richard D. Ridley ("Plaintiff") is a resident of the South Carolina Sexually Violent Predator Treatment Program ("SVPTP").[1] Proceeding pro se and in forma pauperis, he filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. [*See, e.g.*, ECF No. 1 at 20]. He also alleges that his involuntary confinement under the SVPA violates the "Anti-Slavery laws of the United States and South Carolina" and that the SCDMH violated the non-delegation doctrine by contracting with Wellpath to operate the program. *Id.*

---

[1] The SVPTP is the facility of the South Carolina Department of Mental Health ("SCDMH") established pursuant to the South Carolina Sexually Violent Predator Act, S.C. Code Ann. §§ 44-48-10 through 44-48-170 ("SVPA"). On December 1, 2016, the operation of the SVPTP was transferred via a management contract from the SCDMH to Correct Care of South Carolina, LLC ("CCSC"), now known as Wellpath. [*See* ECF No. 29 at 1].

Plaintiff names as defendants the following Wellpath employees: facility administrator Errin Gaffney ("Gaffney"), clinic director Dr. Michele Dube ("Dube"), and medical director Nurse C. Nickles ("Nickles") (collectively, "Defendants"). As to these Defendants, Plaintiff alleges that Dube placed a "false allegation" regarding his sexually-deviant behavior in his treatment records and refused to allow him to move to another wing of the SVPTP facility. Plaintiff alleges after he filed a complaint against Dube regarding his records, he was discriminated and retaliated against by not being provided a job repeated attempts. Plaintiff alleges Gaffney is responsible for the institution being short-staffed and underfunded, and therefore unable to provide appropriate treatment or care to Plaintiff, including sufficient meal portions. Plaintiff further challenges as insufficient Gaffney's response to Covid-19 regarding the air vent systems where he was housed during part of the pandemic.[2] Plaintiff seeks punitive damages, compensatory damages, injunctive relief, and declaratory relief.

This matter comes before the court on Plaintiff's motion to compel. [ECF No. 25]. Pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.), this case has been referred to the undersigned for all pretrial proceedings. The motion having been fully briefed [ECF Nos. 29, 36],

---

[2] Plaintiff does not identify any specific action taken by Nickles.

2

it is ripe for disposition. For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

Plaintiff seeks to compel responses to certain interrogatories he propounded to Dube, Gaffney, and Nickles.[3] First, Plaintiff has identified the following interrogatory responses he argues are inadequate as to Dube:

> 3. What continuing education classes or courses have you taken between Jan. 2019 and May 25, 2021? (Please include dates and place held)
>
> ANSWER: Defendant objects on the grounds that this Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and is disproportionate to the needs of the case. Subject to and without waiving those objections, Defendant has completed all applicable requirements for continuing education and holds a license in good standing to practice psychology in the State of South Carolina.
>
> 6. Did you sit in Plaintiff's group as a facilitator for the months of August, September, and October of 2019? (If yes, what dates)
>
> ANSWER: Defendant generally recalls facilitating group therapy sessions during 2019, but does not recall specific dates.
>
> 9. How many treatment summaries did you perform or produce between Jan. 2019 and September 2019?

---

[3] Plaintiff further argues he has received no documents in response to his requests for production. [*See* ECF No. 25 at 5]. However, the record indicates that he is now in possession of some documentation [*see, e.g.*, ECF No. 29 at 7 ("Defendants have provided Plaintiff with his own medical and grievance records.")], although Plaintiff argues what has been provided is still inadequate. [*See* ECF No. 36]. Because Plaintiff's motion to compel primarily concerns his interrogatory requests, and only briefly mentions his requests for production, the court limits its focus to the main issues addressed in Plaintiff's motion.

> ANSWER: Defendant objects on the grounds that this Interrogatory is not relevant, is [not] reasonably calculated to lead to the discovery of admissible evidence, and is disproportionate to the needs of the case. Further, disclosure of such information is potentially subject to statutory regulation of protected mental health information, including but not limited to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

[ECF No. 29-2 at 3–4 (punctuation altered); ECF No. 29-5 at 2–6; *see also* ECF No. 25 at 1–2].

Plaintiff's motion to compel is denied as to these three interrogatories. As to number 3, Defendants argue the information sought concerning continuing education classes taken by Dube would not lead to the discovery of admissible evidence and is not proportional to the needs of the case. The court finds this information is not relevant to a claim or defense.

As to number 6 and 9, and other interrogatories addressed below, Defendants argue Plaintiff seeks "medical and grievance records and information pertaining to other residents," further arguing as follows:

> Disclosure of confidential medical and grievance records and information pertaining to residents other than Plaintiff would be grossly disproportionate to the needs of the case, and likely to result in immediate, serious harm. To reiterate, Plaintiff is currently committed as a duly adjudicated Sexually Violent Predator. Producing such confidential records and information describing other residents' psychiatric treatment, protected personal health information, and grievances related to interactions with other residents and/or Wellpath staff would be contrary to Plaintiff's treatment goals, violative of counseling confidences, and would likely pose an immediate risk of danger to other residents and staff given Plaintiff's background and recent

4

> behavior. Moreover, such information falls under federal and state law protecting against disclosure of protected health information, including the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the South Carolina Rights of Mental Health Patients Act, S.C. Code Ann. § 44-22-10 *et seq.*, and thus disclosure of the same would be illegal. Further, it is unapparent how Plaintiff could raise any valid claim regarding incidents or treatment involving residents other than himself. Defendants have provided Plaintiff with his own medical and grievance records.

[ECF No. 29 at 6–7].

Plaintiff provides no specific response to the above arguments, and, instead, appears to concede in his motion to compel that some of the information sought include confidential medical and grievance records and information pertaining to residents other than Plaintiff. For example, Plaintiff argues that Dube is being evasive as to the interrogatory concerning her role as a group facilitator in that "[i]t is documented in the computer systems that tracks both group attendees, and topics of discussion each group session, exactly what group sessions Dr. Michelle Dube attended and the topics discussed in that group therapy session." [ECF No. 25 at 2]. However, Plaintiff makes no argument why he would be entitled to this information or as to this information's relevance to any of his claims. Additionally, regarding Plaintiff's interrogatory concerning Dube's treatment summaries, he argues he "is asking for a number not names, or other protected health information," in order "to show defendants lack of experience in doing treatment

5

summaries," *id.*; however, Plaintiff fails to show that any number provided would bear on the claims in his complaint. For these reasons, Plaintiff's motion to compel is denied as to these interrogatories.

Second, Plaintiff has identified the following interrogatory responses he argues are inadequate as to Gaffney:

> 2. How many employees have been terminated, quit, or resigned between May of 2020 and May of 2021?
>
> ANSWER: Defendant objects to this Interrogatory on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. This Interrogatory seeks sensitive and confidential staffing information that could likely pose a security risk if disseminated.
>
> 3. How many complaints have been made by staff/ex-staff member to S.L.E.D. about issues in the SVPTP, between Jan. 2014 and May 25, 2021?
>
> ANSWER: Defendant objects to this Interrogatory on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. This Interrogatory seeks sensitive and confidential staffing information that could likely pose a security risk if disseminated. Further, any such complaints by others would have no bearing on the allegations within Plaintiff's Complaint.
>
> 6. Did you increase dorm workers, dorm worker hours, or implement any extra cleaning schedules in the SVPTP based on the pandemic and CDC Guidelines?
>
> ANSWER: Defendant objects to this Interrogatory to the extent that it seeks staffing information on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. This Interrogatory seeks sensitive and confidential staffing information that could likely pose a security risk if disseminated. Subject to and without waiving those

objections, the SC SVPTP has implemented reasonably necessary measures to contain the spread of COVID-19 within the facility.

7. Have you hired extra staff to facilitate treatment being provided to the residents of the SVPTP?

ANSWER: Defendant objects to this Interrogatory on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. This Interrogatory seeks sensitive and confidential staffing information that could likely pose a security risk if disseminated.

8. How many case mangers/clinicians are currently employed by Wellpath in the SVPTP? (Do not include upstate staff)

ANSWER: Defendant objects to this Interrogatory on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. This Interrogatory seeks sensitive and confidential staffing information that could likely pose a security risk if disseminated.

13. How many complaints have been filed with the oversight committee, to your knowledge, by residents and staff, between Jan. 2019 and May 25, 2021?

ANSWER: Defendant objects to this Interrogatory on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. This Interrogatory seeks sensitive and confidential staffing information that could likely pose a security risk if disseminated. Further, any such complaints by others would have no bearing on the allegations within Plaintiff's Complaint.

14. How many residents currently have paying jobs?

ANSWER: Defendant objects to this Interrogatory on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. This Interrogatory seeks sensitive and confidential staffing information that could likely pose a security risk if disseminated.

> 19. H[ave] there been incidents of nurses giving residents the wrong medication in the SVPTP between Jan. 2014 and May 25, 2021? (If yes, how many?)
>
> ANSWER: Defendant objects to this Interrogatory on the grounds that it is disproportionate to the needs of the case and not relevant to any cognizable claim. Further, any information regarding other SC SVPTP residents is confidential health information protected from disclosure by law.

[ECF No. 29-2 at 5–6 (punctuation altered); ECF No. 29-5 at 7–13; *see also* ECF No. 25 at 2–4].

Fed. R. Civ. P. 26(b)(1) allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Here, Defendant, as the party resisting discovery, has the burden to establish that the information is not relevant or proportional to the needs of the case. *See, e.g., Waters v. Stewart*, C/A No. 4:15-4143-RBH-TER, 2017 WL 770535, at *2 (D.S.C. Feb. 28, 2017). Defendant has failed to carry this burden as to interrogatories 2 and 8, where Plaintiff seeks general numbers about staffing. [*See* ECF No. 25 at 2–3 (interrogatories numbers 2 (seeking the number of staff was terminated, quit, or resigned during the relevant time period), 8 (seeking how many case managers are currently employed)].

Plaintiff is correct that he "has staff shortages as a cause of action/issue in his complaint." [ECF No. 25 at 2].[4] Plaintiff also argues, and Defendants do not dispute, "that the time frame of [interrogatory 2 seeks past information], which means that answering this poses no threat to the 'present' security of the SVPTP." [ECF No. 25 at 2]. In these interrogatories, Plaintiff seeks only numbers, not names, nor details.[5] Accordingly, Plaintiff's motion to compel as to these interrogatories is granted, and Defendants are directed to submit responses to the interrogatories Plaintiff submitted to Gaffney, numbers 2 and 8.

However, Plaintiff's motion to compel is denied as to the remaining interrogatories propounded to Gaffney. "While the rules allow for a liberal approach to 'relevance' for purposes of discovery, the information sought must still meet the threshold of relevance to a claim or defense asserted." *See, e.g., Rowley v. City of N. Myrtle Beach*, C/A No. 4:06-1873-TLW-TER, 2008 WL 11349763, at *5 (D.S.C. Mar. 18, 2008), on reconsideration, C/A No. 4:07-1636-TLW-TER, 2008 WL 11348728 (D.S.C. May 30, 2008); *see also Cuomo v.*

---

[4] Plaintiff has alleged generally that Gaffney is responsible for the facility being understaffed and underfunded, causing multiple negative events; specifically, as to him, Plaintiff alleges that (1) he was not given meals or medication by an unknown nurse because his Covid-19 test was lost, (2) he "has not been able to get treatment material from Wellpath," and (3) he received "small food portions." [ECF No. 1 at 12– 17].

[5] To the extent Plaintiff seeks names and details in other, related interrogatories, Plaintiff's motion to compel is denied, as discussed further below.

9

*Clearing House Assn., LLC*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing.").

In interrogatories 3 and 13, Plaintiff seeks the number of complaints made by staff and residents, unrelated to the specific allegations he has made in his complaint. Likewise, Plaintiff's general inquiries regarding the institution's Covid-19 responses does not bear on his allegations regarding the air vent systems, nor does knowing the number of residents who have paying jobs relate to his allegations he was discriminated and retaliated against. Finally, Plaintiff's question as to whether extra staff were hired to provide treatment to residents, unmoored to a particular time period, does not appear relevant nor proportional to the needs of the case.[6]

As to interrogatories submitted to Nickels, Plaintiff argues she has provided no substantive response to interrogatories submitted to her, instead providing only objections. [*See* ECF No. 29-5 at 14–19; ECF No. 25 at 4].

Defendants argue generally as to Plaintiff's requests to Nickels and others as follows:

---

[6] Likewise, Plaintiff's interrogatory number 19 to Gaffney is unrelated to any cause of action asserted by Plaintiff against Defendants, although Plaintiff argues otherwise. [*See* ECF No. 25 at 3 ("Plaintiff's complaint states that nurses have complained to plaintiff about medical documents being forged . . . as such, these complaints . . . are relevant . . . may lead to the discovery of admissible evidence, and other possible witnesses")].

10

> Disclosure of confidential staffing, personnel, and infrastructure information related to the SVPTP facility is similarly grossly disproportionate to the needs of the case, and likely to result in immediate and serious harm. Adjudicated Sexually Violent Predators such as Plaintiff are housed at a maximum security facility at the Broad River correctional campus in Columbia pursuant to the terms of the SVPA. Because SVPTP residents are housed in a maximum security setting, and due to the fact that the South Carolina General Assembly determined residents of the SVPTP are dangerous to the public, the residents of the SVPTP are subject to searches, supervised visits, limited personal items, and other living restrictions . . . . These limitations imposed upon the residents of the SVPTP are necessary to maintain order, security, and safety within the facility. Plaintiff's requests include those seeking information pertaining to the design of the facility itself as well as staffing numbers, scheduling, and rotation in certain areas. Disclosure of any such information to Plaintiff would pose serious security and safety concerns for other SVPTP residents and staff.

[ECF No. 29 at 7–8].

Plaintiff's interrogatory requests to Nickels mostly seek general information about the medical department and its practices at the SVPTP, unrelated to any allegations as found in Plaintiff's complaint. [*See* ECF No. 29-5 at 14–19 (seeking information about "emergency care drills," "healthcare management plan," "triage protocol," "quality control procedures," "quality assurance program," and "training schedule")]. Plaintiff additionally seeks information unrelated to his claims, as already addressed by the court above. *See id.* (seeking information concerning the number of residents that have died and general resident complaints).

11

> The remaining interrogatory requests are as follows:
>
> 8. How many full time doctors are currently employed in the SVPTP? (Do not include upstate medical)
>
> 9. How many full time nurses (RN and LPN) are currently employed in the SVPTP? (Do not include upstate medical)
>
> 10. How many nurses have quit/resigned between Jan. 2019 and May 25, 2021? (Include dates and names)
>
> 11. Does Mrs. Errin Gaffney sign off on any medical decisions, such as prescription refills, lab tests, or any internal medical operation procedures? (If yes what)
>
> 12. Is the medical dept. short of nurses and doctors for the ratio of residents to medical staff in the SVPTP?
>
> 13. Who is your immediate supervisor in the SVPTP?

*See id.*

As to interrogatories 8–10 and 12, the court grants Plaintiff's motion to compel for the same reasons provided above regarding similar interrogatories propounded to Gaffney, although Defendants need not include dates and names as to number 10 for confidentiality and security reasons, also as discussed above. The court also grants Plaintiff's motion to compel as to interrogatory number 13. However, the court denies Plaintiff's motion to compel as to interrogatory number 11 where Plaintiff makes no allegation related to this interrogatory.

In sum, Plaintiff's motion to compel is granted in part and denied in part. [ECF No. 25]. Plaintiff's request for sanctions is denied. *Id.* at 5.

12

Defendants are directed to provide responses to the interrogatories Plaintiff submitted to Gaffney, numbers 2 and 8, and to Nickels, numbers 8–10, 12, and 13, as modified by the court and discussed above, no later than November 10, 2021.[7]

IT IS SO ORDERED.

*Shiva V. Hodges*

November 2, 2021
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

---

[7] This deadline should allow Plaintiff sufficient time to review the discovery provided and timely respond by November 19, 2021, to Defendants' pending motion for summary judgment. [*See* ECF No. 41].